# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LESAINT LOGISTICS, LLC, an Illinois Limited Liability Company, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 14-cv-1761 ) ) Judge Joan B. Gottschall |
| ELECTRA BICYCLE COMPANY, LLC, a Limited Liability Company, and TREK BICYLE CORPORATION | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION & ORDER

Plaintiff LeSaint Logistics, LLC ("LeSaint") filed a three count amended complaint against Defendants Electra Bicycle Company, LLC ("Electra") and Trek Bicycle Corporation ("Trek") (collectively, "Defendants"). LeSaint's claims arise out of Defendants' alleged breach of contract, intentional interference with business relations, and fraud. Elektra and Trek move to dismiss all claims brought against them under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the court grants the motion in part and denies it in part.

## I. BACKGOUND

The following facts taken from the amended complaint are accepted as true for the purposes of ruling on the motion to dismiss now before the court. LeSaint is in the business of warehousing and logistical management services. Dkt. 34, ¶ 1. Electra is in the business of manufacturing and selling consumer products, including bicycles and bicycle accessories. *Id.*, ¶ 2. On or about February 17, 2009, LeSaint and Electra entered into a contract wherein LeSaint was to provide warehouse and logistics services to Electra at LeSaint's warehouses[1] in exchange

---

[1] Schedule B to the Master Agreement lists two warehouse locations (Fontana, CA and Charlotte, NC).

for payment of certain sums of money for a period of three years ("Master Agreement"). LeSaint alleges that Schedule A of the Master Agreement required Elektra to store between 7,000 and 70,000 units in each of LeSaint's warehouses or facilities. *Id.*, Ex. A.

On or about August 8, 2013, LeSaint and Electra agreed to extend the terms of the Master Agreement through June 30, 2016 by executing the Addendum to Contract and Rate Schedule ("Addendum"). In addition to incorporating the terms of the Master Agreement, the Addendum included a provision whereby the parties agreed not to terminate the agreement through December 31, 2014 ("early-termination provision"). *Id.*, ¶ 5. The Addendum also provided that, "[a]ter September 30, 2014, early cancellation is available with a 90-day written notice of early termination." Dkt. 34-1, p. 26.

Trek is engaged in the business of manufacturing and selling consumer products. Trek is alleged to have purchased Electra sometime prior to January 7, 2014.[2] Dkt. 44, p. 2. However, LeSaint alleges that Trek and Electra began purchase negotiations prior to the August 8, 2013 execution of the Addendum between Electra and LeSaint. At the time Trek is alleged to have purchased Electra, Richard Wells, a representative of Electra, contacted LeSaint account manager Kevin Brown to notify Mr. Brown of the purchase and that, as a result, Electra would be removing its inventory out of the LeSaint facilities. Dkt. 34, ¶ 29.

LeSaint alleges that, prior to May 1, 2014, Electra breached the Addendum and Master Agreement (collectively, "Agreement") by depleting the inventory in the LeSaint facilities to less than 7,000 units. Dkt. 34, ¶ 19. In addition, LeSaint alleges that Electra and/or Trek breached the Agreement by removing all of the goods stored in the LeSaint facilities located in

---

[2] Electra and Trek do not contest LeSaint's claim that Trek purchased Electra in their Motion to Dismiss, Memorandum in Support of their Motion to Dismiss or Reply in Support of their Motion to Dismiss. However, Defendants allege that Trek and Electra remain separate corporate entities. Dkt. 39, p. 9.

Romeoville, Illinois.[3] Finally, LeSaint alleges that, on or about May 31, 2014, Electra and/or Trek further breached the Agreement by removing all goods stored in the LeSaint facilities located in Fontana, California, thereby terminating the Agreement in violation of the no early termination provision set forth in Addendum.[4] *Id.*, ¶ 21. Electra's alleged early termination of agreement and Trek's alleged interference with the business relations between Electra and LeSaint form the basis of LeSaint's claims for breach of contract, tortious interference with business relations, and fraudulent inducement.

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. For the purposes of a motion to dismiss, the court takes all facts alleged by the plaintiff as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). Exhibits attached to a motion to dismiss are considered part of the pleadings if they are referred to in the complaint and are central to the claims. *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

---

[3] Although the Romeoville, Illinois facility is not listed in Schedule B of the Master Agreement, it is listed in the Addendum.
[4] Electra does not dispute that it removed its inventory from LeSaint's facilities in the manner described by LeSaint.

## III. DISCUSSION

Before addressing the merits of the motion to dismiss, the court must first turn to a choice of law issue that was relatively unaddressed in the parties' briefs.[5] According to the Master Agreement executed by LeSaint and Electra, any dispute arising out of the agreement "shall be governed by the laws of the state of California without regard to its conflicts of laws principles." Dkt. 34, Ex. A, p. 10. Although the Master Agreement clearly states that California law will govern any disputes between the parties, both Electra and LeSaint rely on Illinois law to support their respective positions. Because the parties rely extensively, if not exclusively, on Illinois law, the issue is waived and Illinois law will be applied. *Vukadinovich v. McCarthy*, 59 F.3d 58, 62 (7th Cir. 1995) (choice of law is waivable); *Viscofan USA, Inc. v. Flint Group*, No. 08 C 2066, 2009 WL 1285529, at *2-3 (C.D. Ill. May 7, 2009) (McCuskey, J.) (party may waive contractual choice-of-law provision by relying on other law in their argument to the court).

### A. Breach of Contract

Defendants argue that they are entitled to dismissal of the breach of contract claim for two reasons: (1) the Agreement did not require Electra to pay a minimum amount for, or use a minimum amount of, LeSaint's services; and (2) Trek was not a party to the Agreement and therefore cannot be sued for breach of contract. The court will first address whether the Agreement required Electra to use a minimum amount of LeSaint's services.

In construing a contract, a court's primary objective is to ascertain and give effect to the intention of the parties. *Harmon v. Gordon*, 712 F.3d 1044, 1050 (7th Cir. 2013), *citing Thompson v. Gordon*, 241 Ill.2d 428, 349 Ill. Dec. 936, 948 N.E. 2d 39, 47 (2007). The contract must be construed as a whole; each provision must be viewed in light of the other provisions of

---

[5] The choice of law issue was briefly touched up on by Electra and Trek in a footnote in their Memorandum in Support of their Motion to Dismiss. Dkt. 39, p. 7, n. 4.

4

the contract. *Harmon*, 712 F.3d at 1050. If the contract's language is unambiguous, it must be given its plain and ordinary meaning. *Id.* Contract language is not ambiguous simply because the parties disagree as to its meaning, but only if it is "reasonably susceptible to different constructions." *Kaplan v. Shure Bros.*, 266 F.3d 598, 605 (7th Cir. 2001). If, however, the contract is "susceptible to more than one meaning," the court may consider extrinsic evidence to determine the parties' intent. *Harmon*, 712 F.3d at 1050. Although it is true that once contractual ambiguity is established, the task of interpreting the contract's meaning generally becomes a question of fact for the jury, interpretation is a question of law for the court so long as the extrinsic evidence bearing on the interpretation is undisputed. *Continental Cas. Co. v. Northwestern Nat. Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005).

Defendants argue that the Agreement is not a "requirements" contract or an "exclusive dealing" contract. More specifically, they dispute LeSaint's claim that the Agreement required Electra to store between 7,000 and 70,000 units in each of LeSaint's warehouses. Instead, Electra and Trek contend that the contract between LeSaint and Electra represents LeSaint's agreement to provide services to Electra at designated prices and Electra's agreement to pay those designated prices as they were incurred. Therefore, Electra argues, its decision to remove its inventory from LeSaint's warehouses was not a breach of contract as it was not required to store any inventory with LeSaint. The question for the court thus becomes whether both constructions are reasonable.

To support its claim that it was not required to store a minimum number of bicycles in LeSaint's facilities, Electra argues that the Master Agreement explains that Schedule A sets out LeSaint's obligations and not Electra's obligations. Dkt. 39, p. 6. ("Giving effect to the express provisions of the Contract, Schedule A requires LeSaint to have available sufficient storage

5

space for 'between approximately 7,000 and 70,000 units in each warehouse.'"). Therefore, Electra argues that it was not required to store at least 7,000 bicycles, but rather that LeSaint had to make space available for approximately 7,000 bicycles. However, in reading the Master Agreement, there is no language to support Electra's argument that Schedule A sets out only LeSaint's obligations. Nor is there any language to support its allegation that Schedule B pertains only to Electra's obligations. Both schedules simply make more definite the terms of the Master Agreement for both parties.

The court finds that an ambiguity exists regarding whether Electra was required to maintain a certain number of bicycles in LeSaint's facilities and, if so, exactly how many bicycles. It is entirely reasonable to conclude that LeSaint's interpretation of Schedule A is correct—that Electra agreed to house approximately 7,000 to 70,000 in each of LeSaint's warehouses. It may also be reasonable to conclude that the indefinite terms used to describe the number of bicycles to be stored in LeSaint's facilities lends credence to Electra's argument that it was not required to store a minimum number of bicycles. However, there is not enough extrinsic evidence before the court to support one party's understanding of the Master Agreement, and more specifically Schedule A, over the other party's understanding. Because this ambiguity exists, and because there is not enough undisputed extrinsic evidence before the court, interpreting the contract's meaning is a question of fact. Therefore, at this stage, LeSaint has sufficiently pled a cause of action for a breach of contract against Electra. As a result, Electra's motion to dismiss the breach of contract claim is denied.

We now turn to Trek's argument that it be dismissed from the breach of contract claim. The elements for a breach of contract claim are (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) breach of contract by the defendant; and

(4) resultant injury to the plaintiff.  *Avila v. CitiMortgage, Inc.*, 801 F. 3d 777, 786 (7th Cir. 2015).   LeSaint cannot maintain its breach of contract claim against Trek because Trek was not a party to either the Master Agreement or the Addendum.  *Northbound Group, Inc. v. Norvax, Inc.*, 795 F.3d 647, 650 (7th Cir. 2015), *quoting EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 ("It goes without saying that a contract cannot bind a nonparty").

LeSaint's argument that Trek, by purchasing Electra, is bound by the terms of the Master Agreement through a section of the Master Agreement entitled "Assignment" fails for two reasons.  First, as noted by Defendants, Electra and Trek remain separate corporate entities such that holding Trek responsible for a contract entered into by Electra would be improper.  *Northbound Group, Inc.*, 795 F.3d at 650 ("The core principle of corporate law is that a corporation is a distinct legal entity, separate from its shareholders, directors, officers, and affiliated corporations, so that the obligations of a corporation are not shared by officers, directors, or shareholders").  Second, LeSaint misunderstands the language set forth in the section which it invokes to hold Trek liable for breach of contract.  Section 21 of the Master Agreement bars the parties from assigning their interest under the contract to another party unless both parties to the contract consent to the assignment.  Dkt. 34-1, p. 10-11.  However, "either party *may* assign [the] Agreement without such consent to…a successor to the assigning party pursuant to a merger or acquisition."  *Id.*, p. 11 (emphasis added).  Clearly, Electra has not elected to assign its interest or obligation under the Agreement to Trek.  Therefore, the motion to dismiss the breach of contract claim against Trek is granted.

**B. Intentional Interference with Contractual Relations[6]**

In Count II of its amended complaint, LeSaint alleges that Trek interfered with the contractual relations between LeSaint and Electra by intentionally and unjustifiably inducing Electra to breach the Agreement. Dkt. 34, ¶ 33. The elements of the tort of intentional interference with contractual relations are: (1) the existence of a valid and enforceable contract; (2) defendant's awareness of the contractual relation; (3) defendant's intentional and unjustified inducement of breach of the contract; (4) a subsequent breach by a contracting party caused by the defendant's wrongful conduct; and (5) damages resulting from the breach. *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 398 (7th Cir. 2003).

Trek first argues that LeSaint has failed to adequately state a claim for intentional interference with contractual relations because LeSaint has not pled enough facts that could support its claims. The court disagrees. LeSaint has adequately established the existence of the Agreement, has properly alleged that Trek was aware of the Agreement, and has properly alleged that Trek induced the breach by either removing or directing Electra to remove its inventory from LeSaint's facility. LeSaint's allegations that Trek "directed Electra to negotiate for lower rates based on empty promises and fraudulent misrepresentations of increasing volume and three-year commitment" in Count II are found to be inadequately pled pursuant to the heightened pleading requirements of Fed. R. Civ. P. 9(b). However, LeSaint's allegation that Trek intentionally interfered with the Agreement by inducing Electra to effectively terminate the Agreement early has been properly pled. In addition, LeSaint has also adequately alleged that Electra breached the Agreement as set forth earlier and has suffered damages as a result of the breach.

---

[6] Count II of LeSaint's amended complaint is titled "Intentional Interference with Business Relations." However, it is apparent from the allegations contained in Count II that LeSaint's claim is for intentional interference with contractual relations.

Trek's next argument for dismissal appears to be that, by removing its inventory from LeSaint's facilities, Trek and Electra were engaging in a measured and justifiable business judgment, thereby defeating the third element of intentional interference with contractual relations. However, in analyzing whether inducement of breaching a contract is "justified," the courts look to see if the defendant is privileged to interfere with contracts. *Service by Air, Inc. v. Phoenix Cartage and Air Freight, LLC*, 78 F.Supp.3d 852, 864 (N.D. Ill. 2015).

Under Illinois law, corporate officers are privileged to interfere with contracts. *Id.*, *citing HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 157, 137 Ill. Dec. 19, 545 N.E.2d 672 (Ill. 1989). This privilege covers the acts of corporate officers, directors, and shareholders undertaken on behalf of the corporation. *See, e.g., Swager v. Couri*, 77 Ill.2d 173, 32 Ill.Dec. 540, 395 N.E.2d 921, 928 (1979) (recognizing privilege for corporate officers, directors, and shareholders to influence the actions of their corporation); *IOS Capital, Inc. v. Phoenix Printing, Inc.*, 348 Ill.App.3d 366, 283 Ill.Dec. 640, 808 N.E.2d 606, 612 (2004) ("Illinois courts recognize a privilege for corporate officers and directors to use their business judgment and discretion on behalf of the corporation."); *MGD, Inc. v. Dalen Trading Co*., 230 Ill.App.3d 916, 172 Ill.Dec. 736, 596 N.E.2d 15, 18 (1992) (same).

The conditional privilege protects both individuals and entities. *Nation v. American Capital, Ltd.*, 682 F.3d 648, 652 (7th Cir. 2012). The defendant in *Nation* controlled the majority of the subject company's board of directors and, in that role, had a conditional privilege to interfere with the company's contracts. *Id.* The defendant also had a majority equity interest in the company which gave it the right to lawfully influence the actions of the company in pursuit of the company's affairs. *Id., citing Langer v. Becker*, 176 Ill.App.3d 745, 126 Ill.Dec.

203, 531 N.E.2d 830, 833 (1988) ("[T]he stockholders of a corporation have an interest in the corporation and the right to lawfully influence the actions of the directors of the corporation.").

"Illinois courts have been unclear about whether the issue of conditional privilege is part of the plaintiff's claim—that is, an aspect of the plaintiff's burden to prove that the defendant's interference with his contract was unjustified—or an affirmative defense to be proved by the defendant." *Nation*, 682 F.3d at 651, n. 2.[7] However, the point is moot at this stage. Although Trek and Electra admit in its memorandum in support of their motion to dismiss that Trek is Electra's "corporate parent," it is unknown, at this stage, whether Trek, like the defendant in *Nation*, controls Electra's board of directors or owns a majority equity interest which would give it the right to lawfully influence Electra's actions. Therefore, the motion to dismiss the intentional interference of contractual relations claim against Trek is denied.

## C. Fraudulent Inducement

In Count III of the amended complaint, LeSaint alleges that Electra fraudulently induced LeSaint into executing the Addendum, which froze prices at the rate agreed upon in the Master Agreement instead of increasing prices over a new three-year period, when Electra had no intention of ever honoring the Addendum.[8] Under Illinois law, a claim for fraudulent inducement requires proof of the following elements: (1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the

---

[7] "*Compare HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 137 Ill.Dec. 19, 545 N.E.2d 672, 677 (1989) ('In Illinois, this court has repeatedly stated that where the conduct of a defendant in an interference with contract action was privileged, it is the plaintiff's burden to plead and prove that the defendant's conduct was unjustified or malicious.'), *with Roy v. Coyne*, 259 Ill.App.3d 269, 196 Ill.Dec. 859, 630 N.E.2d 1024, 1033 (1994) ('[The language in HPI Health Care ] certainly does not foreclose the possibility that justification can be an affirmative defense ... rather than an absence of justification being an essential element....')." *Nation*, 682 F.3d at 651, n. 2.

[8] As noted by Defendants in their Motion to Dismiss, Count III is directed toward Electra, and all of the allegations contained in Count III are directed toward Electra, but the prayer for relief is against Trek. The court need not address the issue as Count III is dismissed.

other party resulting from such reliance. *Hoseman v. Weinschneider*, 322 F.3d 468, 476 (7th Cir. 2003).

LeSaint's allegations do not adequately state a claim for fraudulent inducement. Rule 9(b) requires LeSaint to plead with particularity the circumstances constituting fraud by alleging the "who, what, when, where, and how." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012). LeSaint has failed to meet this heightened pleading standard by failing to plead, with any sort of specificity, a false statement of material fact made by Electra. The only specific statement that LeSaint alleges Electra made took place on or about July 13, 2013. According to LeSaint, Richard Wells of Electra proposed a rate freeze for the Addendum in exchange for an increase in the number bicycles moving through LeSaint's warehouse facilities. Dkt. 34, ¶ 41-42. LeSaint claims that Electra sought to obtain the rate freeze with the knowledge that it would not honor the three-year Addendum. However, LeSaint has not alleged that, at the time the statement was made by Mr. Wells, Mr. Wells knew it was false. LeSaint has also not alleged that, at the time the statement was made, Electra was aware that it was going to be purchased by Trek. Nor does LeSaint allege that, at the time the statement was made, Electra knew it was going to be purchased by Trek and that, as a result, it would move all of its inventory out of LeSaint's warehouse facilities.

According to the amended complaint and its attached exhibits, the Addendum was executed on August 8, 2013. Trek is alleged to have acquired Electra sometime prior to January 7, 2014. The amended complaint is devoid of any allegations that could reasonably lead the court to conclude that the July 13, 2013 statement by Richard Wells was anything more than a business negotiation made on behalf of Electra in order to secure the best deal possible. To assume that the statement is fraudulent simply because Trek purchased Electra at a later date and

11

because Electra allegedly breached the contract at a later date is implausible at worst, *Ashcroft v. Iqbal*, 556 U.S. 622, 678 (2009), and, at best, not well pled. Count III is dismissed.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss [38] is granted in part and denied in part.

Date: November 19, 2015                               /s/

Joan B. Gottschall

United States District Judge